# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

EDWARD MAKINEN;

      *Plaintiff,*                **CASE NO.: 2:26-cv-12569**

 v.                               **Hon.**

CLINTONDALE COMMUNIY
SCHOOLS, by and through its Board      **JURY TRIAL DEMANDED**
of Education and KENNETH
JANCZAREK;

      *Defendants.*

---

## COMPLAINT

This is an action arising from employment discrimination at Clintondale Community Schools in Clinton Township, Michigan.

## PARTIES

1. Plaintiff Edward Makinen ("Makinen") is a resident of the State of Michigan.

2. Defendant Clintondale Community Schools ("Clintondale" or "the District") is a public school district organized under the laws of the State of Michigan, with its principal place of business located at 35100 Little Mack Avenue, Clinton Township, Michigan 48035.

3. Defendant Kenneth Janczarek ("Janczarek") is an individual who, at all times relevant to this Complaint, was employed as the Superintendent of Clintondale Community Schools. Upon information and belief, Janczarek is a resident of the State of Michigan.

## JURISDICTION & VENUE

4. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

5. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, as they arise from the same case or controversy as Plaintiff's federal claims.

6. Defendant Clintondale conducts business within the State of Michigan.

7. Defendant Janczarek was employed by Clintondale, because he is an employee of Clintondale and personally violated certain rights and policies, the effects of which were felt in the State of Michigan.

8. Venue is proper in the Eastern District of Michigan because the events relevant to this action occurred primarily within the geographical confines of the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

9.      On August 28, 2023, Plaintiff was hired by Clintondale Community Schools for the 2023-2024 school year as Chief Financial Officer ("CFO"), reporting directly to Superintendent Janczarek.

10.      Plaintiff had previously worked for the District and had demonstrated his capabilities and work ethic, as evidenced by his rehiring.

11.      In addition to his CFO responsibilities, Plaintiff picked up the workload of the Operations Director, as the employee in that position was retiring.

12.      Upon Plaintiff's hiring, the District agreed to provide additional training through a consultant at Plaintiff's request, with mutual agreement among Plaintiff, the Board of Education, and Janczarek that Plaintiff would be trained and have full support to succeed in the position.

13.      After an initial consultant was dismissed, Plaintiff was allowed to hire Aurel Malutan as a consultant to provide training and support.

14.      In the spring 2024 semester, a special election was held for local voters on a proposal for a sinking fund.

15.      The school district, including Plaintiff, completed extensive work drafting the sinking fund plan to benefit the students of the district.

16.      On May 7, 2024, the day of the special election, an unofficial watch party was held after hours at a local bar off campus called "The Nail."

17.    Plaintiff, Kenneth Janczarek, Sherry Moss, Bob Walmsley, Lee Walmsley, Alexandra Hichel, Jared Maynard, Jay Blazius, and others were in attendance at The Nail.

18.    All activities at The Nail occurred during the individuals' personal time and were not related to the district and the employees were not on the clock.

19.    The sinking fund did not pass.

20.    Jay Blazius, the main lobbyist for the district, and Janczarek came to a large table of employees and stated that a parent had approached them at Rainbow Elementary School earlier that day.[1]

21.    The parent told Janczarek and Blazius that they voted "No" on the sinking fund because they were specifically told that the principal of Rainbow Elementary School was telling parents that a "Yes" vote would mean the closing of Rainbow Elementary School.

22.    The alleged statement by the Rainbow Early Childhood Center principal was completely untrue.

23.    Multiple individuals were present and heard statements regarding the Rainbow parents' voting from Janczarek that evening.

---

[1] Rainbow Early Childhood Center is located at 33749 Wurfel St, Clinton Township, MI 48035, within Clintondale Community Schools.

24.    Plaintiff stated that someone should get reprimanded for wrongfully attempting to sway voters and costing the district almost 12 million dollars in lost revenue within a ten-year period.

25.    In response, Janczarek told Plaintiff to "Shut the fuck up, you sound like an idiot."

26.    Plaintiff advised Janczarek not to speak to him like that.

27.    After this exchange, Janczarek bought Plaintiff a beer.

28.    Plaintiff never said another word to Janczarek that night.

29.    On May 10, 2024, Janczarek called Plaintiff into his office.

30.    During this meeting, Janczarek asked Plaintiff about the consultant's timesheet and the current amount incurred for the consultant.

31.    The estimate on that date for training Plaintiff, the accountant, and working on grants for the district was approximately $50,000.

32.    Janczarek scoffed and made a comment that it was getting pricey and he believed he had fulfilled his end of the bargain.

33.    No further direction was given by Janczarek regarding the consultant's fees at that time.

34.    Janczarek had previously been aware that the amount of the consultant fees was roughly $30,000 in February 2024, and it was verbally agreed upon by Janczarek to budget a maximum of $80,000, but to try to come under that number.

35. The meeting then shifted to a discussion about the employees who were openly against the sinking fund.

36. There was a conversation as to whether those employees could or should be reprimanded, and at the end it was determined that Janczarek was afraid of potential legal action.

37. Nothing came of the exchange at the bar between Plaintiff and Janczarek and no Clintondale employee was reprimanded or fired for swaying the voters in the special election.

38. However, the interaction outside of employment was the opportunity that Janczarek needed to remove Plaintiff from his position as CFO and insert Presleigh Derosette.

39. Presleigh Derosette was an accountant for the district who reported directly to Plaintiff.

40. None of Derosette's job responsibilities required her to report to Janczarek.

41. However, Derosette spent hours in Janczarek's office behind closed doors.

42. Some of Derosette's timesheets were only hand-signed and authorized by Janczarek and not logged into the district-wide time tracking system that is required for all hourly employees.

43. The GAP time authorized on certain sheets was also entered incorrectly by Janczarek, but payroll was forced to pay this amount as Janczarek used his so-called "executive power" to approve Derosette's time sheets.

44. However, Janczarek only used this power to approve Derosette's time sheets, and all other hourly employees used the time tracking system.

45. Janczarek used his executive power selectively to approve Derosette's time sheets while requiring all other hourly employees to use the time tracking system.

46. It is believed that Derosette and Janczarek entered into a relationship in or around May 2024.

47. Plaintiff learned of the relationship between Janczarek and Derosette.

48. Instead of ending the relationship or addressing it appropriately, Janczarek chose to target Plaintiff to remove him from the district and place Derosette in his position.

49. On May 15, 2024, Janczarek attempted to impose shortened, unachievable deadlines on Plaintiff's responsibilities, which resulted in Plaintiff failing to sign the memo as directed.

50. It was Janczarek's attempt to place shortened, unachievable deadlines on Plaintiff that would allow him to come back and seek Plaintiff's termination to cover up for his own wrongdoings.

51.   On May 17, 2024, Janczarek followed up with Plaintiff regarding the deadlines in a meeting that was recorded.

52.   Janczarek was verbally abusive to his employees, including Plaintiff, during the May 17, 2024 meeting.

53.   Following the May 17, 2024 meeting, Plaintiff went home sick.

54.   At no time was Plaintiff present at Rainbow Early Childhood Center on May 17, 2024.

55.   Later that evening, a 10-minute phone conversation was held between then-Board President Jared Maynard and Plaintiff, during which no mention of Plaintiff showing up at Rainbow was discussed, and no issues between Plaintiff and Janczarek were discussed.

56.   On May 20, 2024, Janczarek again asked Plaintiff for completed tasks.

57.   Plaintiff provided Janczarek, with witnesses present, that some of these tasks would be completed within the new shortened timeline that Janczarek requested, while other items were deemed to be non-detrimental and would need to wait until other action items critical to the district were completed.

58.   Two of the five (2/5) items were completed on May 28, 2024.

59.   The budget created by Plaintiff was presented and approved by the Board of Education on June 24, 2024.

60.   The last two items were completed by June 28, 2024.

61. Janczarek refused to meet with Plaintiff to discuss these or any district action items, stating he was afraid Plaintiff would record more meetings with him.

62. At this juncture, Plaintiff was not receiving support or direction from district leadership as promised; instead, Plaintiff was being threatened with disciplinary action such as a personal improvement plan ("PIP") and suspensions, without verbal or written warnings.

63. The budget was not due until June 28, 2024.

64. Janczarek, Maynard, and Plaintiff met to go over the budget Plaintiff created in mid-June 2024, and this budget was Board approved unanimously on June 24, 2024.

65. Between May and June 2024, Plaintiff filed multiple complaints against Janczarek and Derosette with the Clintondale Board of Education.

66. On June 11, 2024, Plaintiff submitted another complaint with the Clintondale Board of Education against Janczarek and Derosette regarding Janczarek's harassing behavior towards Plaintiff, along with timecard discrepancies and insubordinate behavior Derosette showed towards Plaintiff.

67. These complaints led to a special board meeting on June 17, 2024.

68. The Clintondale Board of Education dismissed the complaint in its entirety and at that time refused to do a formal investigation.

69. On June 24, 2024, Plaintiff's contract was extended for another year.

70. There was no correspondence between Janczarek and Plaintiff between June 25, 2024 and July 10, 2024.

71. On July 10, 2024, Plaintiff was placed on non-disciplinary paid administrative leave.

72. Plaintiff was placed on administrative leave beginning July 10, 2024, and therefore could not have authorized District purchases during the period he was not working.

73. Immediately following Plaintiff's leave, Derosette was given the interim position of CFO, a position for which she was not qualified.

74. Plaintiff's contract was terminated in August 2024.

75. On October 28, 2024, Janczarek permanently installed Derosette in the CFO position for the 2024-2025 school year, doubling her salary retroactively to July 1, 2024 after the board voted.

76. Placing Derosette in Plaintiff's CFO position provided Derosette with approximately a 50% pay increase, the likes of which are unheard of.

77. To add insult to injury, Clintondale denied Plaintiff's unemployment claim, stating that he was on "disciplinary" leave, which was factually inaccurate.

78. Derosette's contract was not extended past the 2024-2025 school year.

79. There are currently no males on the superintendent's executive council, as they all have been terminated or forced to resign.

80. On December 27, 2025, Plaintiff received a phone call from Teresa Wilson, who Plaintiff understood to be the District's executive assistant at that time, asking whether he had authorized large credit card charges on behalf of Superintendent Janczarek or charges connected to the athletic department.

81. Janczarek spoke with Clintondale personnel and stated that Plaintiff had authorized large credit card charges for the athletic department against policy.

82. Plaintiff expressly denies authorizing any improper charges.

83. Janczarek's attempts to create or circulate a narrative of financial misconduct to discredit Plaintiff in connection with his protected activity and EEOC charge are improper and defamatory.

84. These allegations have been spread to numerous individuals and have been identified as a topic on the Board Meeting Agenda on December 15, 2025.

85. At the January 12, 2026 board meeting, there was an entire Credit Card Presentation, as reflected in the minutes.

86. The board approved the review of a new credit card policy by the finance committee.

87. These allegations appear to be arising well after Plaintiff's separation from employment and constitute continuing retaliatory conduct and/or, at minimum, probative evidence of retaliatory animus and pretext regarding the District's asserted reasons for its actions.

88.     Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") in December 2024.

89.     The EEOC issued a Right to Sue on June 2, 2026.

**Respondeat Superior and Agency**

90.     Under Federal and Michigan law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

91.     At all times relevant to this action, Defendant Janczarek was employed by Clintondale. Some of his acts and omissions relevant to this litigation were undertaken within the scope of his employment with Clintondale.

92.     At the time of this Complaint, only the individual Defendants himself is aware of the exact role that each individual Defendant played in the events that are subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

**CAUSES OF ACTION**

**FIRST COUNT – SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

93.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

12

94.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's sex.

95.   Plaintiff is a member of a protected class as a male.

96.   Plaintiff was qualified for his position as CFO, as demonstrated by his hiring, his rehiring, his successful performance, and the extension of his contract on that same date.

97.   There is not a single shred of evidence to show that Plaintiff was not a qualified employee.

98.   Plaintiff suffered an adverse employment action when he was placed on non-disciplinary administrative leave on July 10, 2024, and his contract was terminated in August 2024.

99.   Plaintiff was replaced by Presleigh Derosette, a female who was less qualified for the CFO position.

100.   Derosette was having an inappropriate relationship with Janczarek behind closed doors.

101. When Plaintiff learned of the relationship, instead of ending it or addressing it appropriately, Janczarek chose to target Plaintiff for removal and placed Derosette, a female, in his position.

102. Janczarek did everything possible to force Plaintiff out through hostile events and positioned Plaintiff for termination of his contract.

103. Installing Derosette into Plaintiff's CFO position can only be viewed as a result of her gender and her inappropriate relationship with Janczarek.

104. Janczarek's preferential treatment of Derosette, including spending hours with her behind closed doors, using his executive power selectively to approve her inaccurate timesheets, and doubling her salary to install her in Plaintiff's position, demonstrates sex-based favoritism.

105. Janczarek's belief that men are hard to control and his preference for working with females whom he believes are easily threatened and intimidated constitutes gender-based animus.

106. The fact that there are currently no males on the superintendent's executive council, as they have all been terminated or forced to resign, demonstrates a pattern and practice of sex discrimination.

107. Similarly situated female employees, including Derosette, were treated more favorably than Plaintiff.

14

108.   The legitimate, non-discriminatory reasons offered by Defendants for Plaintiff's termination are pretextual.

109.   Janczarek's alleged concerns about Plaintiff's performance arose only after Plaintiff questioned Janczarek about his relationship with Derosette and filed complaints with the Board of Education.

110.   The shortened, unachievable deadlines imposed on Plaintiff were designed to manufacture grounds for termination.

111.   Plaintiff completed all required tasks, including the budget that was unanimously approved by the Board and led to a contract extension, demonstrating his competence and undermining Defendants' stated reasons.

112.   The District failed to conduct an impartial investigation of Plaintiff's complaints and instead retained a law firm already working for the District to investigate the Superintendent, creating an inherent conflict of interest.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for compensatory damages in amounts to be determined at trial and as are allowed under the statute;

b) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees;

c) Enter judgment against Defendant Clintondale and in favor of Plaintiff for all attorneys' fees sustained in connection with the prosecution of this action; and

d) Grant such other and further relief as justice requires.

**SECOND COUNT – RETALIATION IN VIOLATION OF TITLE VII**

113.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

114.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), prohibits retaliation against employees for engaging in conduct protected by Title VII, including opposing unlawful employment practices and participating in investigations or proceedings under Title VII.

115.   Plaintiff engaged in activity protected by Title VII when he filed multiple complaints with the Clintondale Board of Education between May 22 and June 11, 2024, alleging discrimination, harassment, and inappropriate conduct by Janczarek.

116.   Plaintiff engaged in protected activity when he opposed Janczarek's inappropriate relationship with Derosette and the preferential treatment she received.

117.   Plaintiff engaged in protected activity when he filed a Charge of Discrimination with the EEOC on or about December 19, 2024.

118. Defendants were aware of Plaintiff's protected activity, as the complaints were filed directly with the Board of Education and Janczarek was the subject of those complaints.

119. Following Plaintiff's protected activity, Defendants took materially adverse actions against Plaintiff, including:

120. Imposing shortened, unachievable deadlines designed to manufacture grounds for termination;

121. Refusing to meet with Plaintiff or provide support and direction;

122. Threatening Plaintiff with disciplinary action without prior verbal or written warnings;

123. Placing Plaintiff on administrative leave on July 10, 2024;

124. Terminating Plaintiff's contract in August 2024;

125. Denying Plaintiff's unemployment claim by falsely stating he was on "disciplinary" leave.

126. A causal connection exists between Plaintiff's protected activity and the materially adverse actions taken against him.

127. The temporal proximity between Plaintiff's complaints in May and June 2024 and his placement on administrative leave on July 10, 2024, followed by his termination in August 2024, demonstrates causal connection.

128. Janczarek's retaliatory animus is further demonstrated by his verbal abuse of Plaintiff, his refusal to meet with Plaintiff after Plaintiff made protected complaints, and his immediate installation of Derosette into Plaintiff's position.

129. But for Plaintiff's protected activity, Defendants would not have taken the adverse employment actions against him.

130. The legitimate, non-discriminatory reasons offered by Defendants for Plaintiff's termination are pretextual and designed to mask retaliation.

131. Defendants engaged in continuing retaliatory conduct even after Plaintiff's separation from employment by circulating false allegations in December 2025 and January 2026 that Plaintiff had authorized improper credit card charges.

132. These post-termination allegations were spread to numerous individuals, discussed at Board meetings, and used to further damage Plaintiff's professional reputation.

133. The false credit card allegations constitute evidence of retaliatory animus and pretext regarding the District's asserted reasons for its actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for compensatory damages in amounts to be determined at trial and as are allowed under the statute;

18

b)  Enter judgment against Defendant Clintondale and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action;

c)  Enter judgment against Defendant Clintondale and in favor of Plaintiff for all attorneys' fees sustained in connection with the prosecution of this action; and

d)  Grant such other and further relief as justice requires.

### THIRD COUNT – DEFAMATION
### (Against Defendant Janczarek only)

134.  Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

135.  Defendant Janczarek made false and defamatory statements concerning Plaintiff.

136.  Defendant Janczarek stated that Plaintiff had authorized large credit card charges for the athletic department against District policy.

137.  These statements were made to Teresa Wilson, members of the Board of Education, and other District employees on or about December 27, 2025 and continuing thereafter.

138.  The statements that Plaintiff authorized improper credit card charges against District policy are false.

19

139.   Plaintiff expressly denies authorizing any improper charges and was on administrative leave beginning July 10, 2024, and therefore could not have authorized District purchases during that period.

140.   The false statements were published to third parties, including District employees, Board members, and members of the public who attended or reviewed materials from the December 15, 2025, and January 12, 2026, Board meetings.

141.   Defendant Janczarek made these statements with knowledge that they were false or with reckless disregard of their truth or falsity.

142.   The statements were, at the very least, negligently made on the part of Defendant Janczarek.

143.   The statements are defamatory per se because they impute to Plaintiff conduct that would adversely affect his fitness for his profession as a Chief Financial Officer.

144.   The statements charge Plaintiff with financial misconduct, dishonesty, and violations of District policy in his professional capacity.

145.   Such statements tend to harm Plaintiff's reputation as a financial professional and deter others from associating or dealing with him professionally.

146.   As a direct and proximate result of Defendant Janczarek's defamatory statements, Plaintiff has suffered damages to his professional reputation.

20

147.   Plaintiff has been injured in his profession and has been deterred from obtaining employment in his field.

148.   Plaintiff has suffered emotional distress and mental anguish as a result of the false statements.

149.   Because the statements are defamatory per se, injury to Plaintiff's reputation is presumed, and general damages are recoverable.

150.   The defamatory statements were made with actual malice and constitute part of a pattern of retaliatory conduct designed to harm Plaintiff's professional reputation.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

e) Enter judgment against Defendant and in favor of Plaintiff for actual damages for compensatory damages in amounts to be determined at trial and as are allowed under the statute;

f) Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action;

g) Enter judgment against Defendant and in favor of Plaintiff for all attorneys' fees sustained in connection with the prosecution of this action; and

h) Grant such other and further relief as justice requires.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: July 27, 2026

<div style="margin-left:40%">

Respectfully submitted,

/s/ Keith Altman
Keith Altman, Esq.
THE LAW OFFICE OF KEITH ALTMAN
30474 Fox Club Drive
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

*Attorneys for Plaintiff*

</div>